ANDERSON OLDSMOBILE, Inc. v. HOF-
FERBERT, Collector of Internal Reve-
nue, Dist. of Maryland.

Civ. No. 5184.

United States District Court
D. Maryland, Civil Division.

Feb. 8, 1952.

John S. Stanley, Roger A. Clapp, and Hershey, Donaldson, Williams & Stanley all of Baltimore, Md., for plaintiff.

Bernard J. Flynn, U. S. Atty., Frederick J. Green, Jr., Asst. U. S. Atty., Baltimore, Md., for defendant.

CHESNUT, District Judge.

This is a federal income tax case. For the years 1945 and 1946 the Commissioner of Internal Revenue assessed a deficiency tax which was paid by the taxpayer, who petitioned for a refund which was overruled, and then brought this suit to recover the alleged overpayment. The facts are all stipulated and can be briefly stated.

The taxpayer is a Maryland corporation engaged in Baltimore City in the automobile service business including the purchase and re-sale of used automobiles. During the years in question, and while the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., was in force, the taxpayer bought and re-sold automobiles, the cost price of some of which was in excess of the ceiling prices officially determined therefor by the Price Administrator. In the taxpayer's returns its gross income was computed on the basis of deducting the whole cost price from the re-sale price. The deficiency tax was computed by the Commissioner on the basis of deducting from the taxpayer's re-sale prices only the amounts of the authorized ceiling prices. The amount of the deficiency assessment for the two years paid by the taxpayer and now sought to be recovered is $17,312.02, with interest thereon from the date of payment, October 15, 1947. The sole question involved in this case is whether this action of the Commissioner in so determining the deficiency tax was legally correct. In my opinion it was not.

The precise question has in recent years frequently been decided against the Commissioner by the Tax Court. The leading case is Sullenger v. Commissioner, 11 T. C. 1076, decided December 23, 1948. The decision was appealed to the Fifth Circuit but it appears the case was voluntarily dismissed by the Commissioner before hearing. The Commissioner's contention was revived in the case of Sternkopf v. Commissioner, and again decided adversely to him by the Tax Court on March 16, 1950 (CCH Dec. 17,546(M)). Again on October 24, 1951 in the case of Sol Smith v. Commissioner (CCH Dec. 18,617(M)) in a factually similar case where the taxpayer was an automobile dealer and had paid for cars purchase amounts in excess of the ceiling price, the Tax Court held that the whole purchase price must be deducted from the re-sale price for income tax purposes. Another case of the same kind involving the purchase and re-sale of tires was similarly decided by the Tax Court, Colonial Rubber Co. v. Commissioner, (CCH Dec. 18,307(M)). Numerous other cases involving similar factual situations have also been so decided by the Tax Court.[1]

---

1. The other cases here referred to and the dates on which they were decided are as follows: Gentry v. Commissioner, Feb. 7, 1951 (CCH Dec. 18,116(M)); Piper v. Commissioner, Feb. 27, 1951 (CCH Dec. 18,163(M)); Couch v. Commissioner, Feb. 28, 1951 (CCH Dec. 18,- 164(M)); Baum v. Commissioner, Mar. 21, 1951 (CCH Dec. 18,210(M)); Conner v. Commissioner, Oct. 24, 1951 (CCH Dec. 18,629(M)); McCullough v. Commissioner, July 14, 1949 (CCH Dec. 17,108 (M)); Williamson v. Commissioner, Nov. 28, 1949 (CCH Dec. 17,302(M)); Gu-

So far as counsel have been able to discover the particular question has heretofore been adjudicated by no United States Court of Appeals and by only one District Court. The last mentioned case is that of Herber v. Jones, Collector, decided by the District Court for the Western District of Oklahoma, and reported in 103 F. Supp. 210, where the taxpayer was engaged in selling used cars. The conclusions of the court are stated as follows:

"III. Plaintiffs, by their admission, violated the provisions of the Emergency Price Control Act, 56 U.S.Stat. 23. Upon conviction in an appropriate action, under section 205 of said Act, 50 U.S.C.A.Appendix, § 925, both fine and imprisonment might have been imposed. To sustain the contention of the Government would in effect be imposing a penalty in this action for violating the Emergency Price Control Act.

"IV. Congress, by the Sixteenth Amendment to the Constitution, was empowered 'to lay and collect taxes on incomes, from whatever source derived * * *'. Gross income, for the purpose of this action, includes gains and profits derived from the sales of the automobiles in question, 26 U.S.C. § 22. Money actually paid, although in excess of the prevailing ceiling price, for the purchase price of an article cannot be classified as a gain, profit or income.

"V. The action of the Internal Revenue agent in deducting sums paid in excess of the ceiling price from the purchase price of the automobiles in question was and is without authority of law. The Court of Tax Appeals has so held in at least two cases; Sullenger v. C.I.R., 11 T.C. 1076,

and McCullough v. C.I.R., Tax Court Memo dated July 14, 1949.

"VI. Plaintiffs under the stipulation and admitted facts are entitled to a judgment on each cause of action in the amount sued for."

If the decision in this case is to be based on the provisions of the income tax law alone, it is clear that the plaintiff's position in this case is correct. It is not contended by the defendant that there is any authority in the federal tax statutes for the Collector's deficiency tax in this case. What is contended for by the defendant is that as a matter of general "public policy" the Commissioner was justified in ignoring the actual cost price of the cars bought by the plaintiff for re-sale and thus in the computation of the profit, allowing only the legal ceiling prices. The position is finally stated in the defendant's brief in this case as follows: "While it is true that ordinarily the correct statutory basis for determining gain or loss from the sale of property is cost, and that the amount paid for property purchased is usually regarded as the cost of such property under the statute, we submit that under special and unusual facts and circumstances, such as are present here, the actual expenditure cannot always be considered to be the correct statutory cost."[2]

The income tax law applicable to this case, not being in dispute, may be very briefly mentioned. While the statutes have frequently been amended from year to year in important detail, basically they are now the same as they have been since 1913 when the 16th Amendment (effective Feb. 25, 1913) first empowered Congress "to lay

minski v. Commissioner, Feb. 28, 1951 (CCH Dec. 18,157(M)). It is said in the Government's brief in the instant case that a number of these decisions of the Tax Court have been appealed to the Fifth or other Circuit Courts by petition for review.

2. The only authority cited in support of this position is the case of Majestic Securities Corp. v. Commissioner, 8 Cir., 120 F.2d 12, affirming the decision of the Board of Tax Appeals, 42 B.T.A. 698. I do not think the case cited supports the position so broadly stated. As I read the

opinion the decision was placed on the ground that the Commissioner found as a fact what was the cost price in the particular transaction and that the taxpayer's case must fail because it did not meet the necessary burden of proof to overcome the Commissioner's factual decision. In this connection see Sternkopf v. Commissioner, decided by the Tax Court Mar. 16, 1950, and reported in CCH Tax Court Memo. Decisions, 1950, Vol. 9, p. 201, and Commissioner v. Matheson, 5 Cir., 82 F.2d 380.

and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration". Constitutionally the only thing that can be taxed by Congress is "income". And the tax actually imposed by Congress has been on net income as distinct from gross income. The tax is not, never has been and could not constitutionally be upon "gross receipts".[3] The applicable law is to be found principally in sections 21, 22 and 23 of 26 U.S.C.A., Internal Revenue Code. Under section 21 the net income is defined as gross income computed under section 22 less the deductions allowed by section 23. Gross income is defined by section 22 (in relevant part) as follows: " 'Gross income' includes gains, profits, and income derived from * * * businesses, commerce, or sales, or dealings in property, whether real or personal * * * also from * * * transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever." [4]

It is to be noted that it is only profits and income from business which constitutes gross income. It is only after such profit has so been determined (constituting gross income) that further deductions are to be made therefrom, as authorized by section 23, in order to arrive at the net income which is taxable. And it is also to be noted that, as an economic and mathematical truism, gain or profit which constitutes gross income cannot be determined without deducting the cost of the goods sold from the gross selling price. The deduction so made in the computation is a necessary one under section 22 to determine gross income and is definitely different and distinct from the deduction authorized by section 23 to be made from gross income to determine net income. This consideration is important in view of some of the contentions made by the Collector in this case.

It may be well also to note the provisions of sections 111(a) and 113(a) which relate more particularly to dealings in property than to purchase and sale in the conduct of business generally. Section 111(a) provides that—"(a) The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the *adjusted basis* provided in section 113(b) for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized." Italics supplied.

And section 113(a) provides that "the basis of property shall be the cost of such property; * * *." [5]

In the Sullenger case, the leading case in the Tax Court on the point here involved, the argument on behalf of the Commissioner was that the amounts paid by the taxpayer in excess of the O.P.A. prices were to be disregarded as unauthorized deductions because they were merely *bribes* paid by the taxpayer to induce the seller to sell; and that as deductions (those authorized by section 23) are a matter of grace and not of right, to allow them would be contrary to "public policy". As to this, the Tax Court said: "The trouble with his argument is that its major premise is unsound. The amounts in question were actually, as the stipulation shows, a part of the cost of goods sold and are not being claimed by this petitioner as a deduction under Section 23. Section 23 makes no provision for the cost of goods sold, but the Commissioner has always recognized, as indeed he must to stay within the Constitution, that the cost of goods

---

3. See Southern Pacific Co. v. Lowe, 247 U. S. 330, 38 S.Ct. 540, 62 L.Ed. 1142; Doyle v. Mitchell Bros. Co., 247 U.S. 179, 38 S.Ct. 467, 62 L.Ed. 1054.

4. "Income" has been defined by the Supreme Court as " '* * * the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets". Eisner

v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 193, 64 L.Ed. 521, 9 A.L.R. 1570; United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 56 S.Ct. 353, 80 L.Ed. 500.

5. The above references to 26 U.S.C.A. Internal Revenue Code, are to the 1946 edition. We are not concerned in this case with the matter of the "adjusted" basis for property.

sold must be deducted from gross receipts in order to arrive· at gross income. No more than gross income can be subjected to income tax upon any theory. The income from a business which is wholly illegal was held subject to income tax in U. S. v. Sullivan, 274 U.S. 259 [47 S.Ct. 607, 71 L.Ed. 1037, 51 A.L.R. 1020]. Nevertheless, it was necessary to determine what that income was, and the cost of an illegal purchase of liquor was subtracted from proceeds of ·the illegal sale of the liquor in order to arrive at the gain from the illegal transactions which were subjected to income tax in that case. This is not a case of penalties provided for violation of the O.P.A. regulations. See the Emergency Price Control Act of 1942 (Title 50 App. U.S.C.A. sec. 901 et seq.). No authority has been cited for denying to this taxpayer the cost of goods sold in computing his profit, which profit alone is gross income· for income tax purposes. It is unnecessary to discuss cases involving deductions, since this case does ·not involve any deduction. The point in controversy is decided for the petitioners." [6]

More than a year later in the case of Sternkopf v. Commissioner, supra, the latter revived his contention and asked that the decision in the Sullenger case should be reconsidered and reversed. In the later Sternkopf case the argument on· behalf of the Commissioner described the excess over the ceiling price not as a bribe but as an "intangible" paid in order to obtain a competitive advantage. The opinion also pointed out that in the Sullenger case the Tax Court had considered and· overruled the contention then made for the Commissioner that the excess payment was "not truly a part of the cost of goods sold", but in reality nothing but· a bribe.

Still a year later (in 1951) in the case of Sol Smith v. Commissioner, supra, and Colonial Rubber Co. v. Commissioner, supra, the Tax Court again by opinion reaffirmed its ruling in the Sullenger case. In the Colonial Rubber case the opinion

included the following: "This ·Court has not been cited by the respondent to any better authority than United States v, Sullivan,· supra, or to one which compels departing from ·the rule expressed in the Sullenger case. The respondent has made the same argument and cited substantially the same authorities here as he presented to ·this Court in the Sullenger case, which were rejected. It must be held, therefore, in this proceeding that the petitioner's cost of materials which were resold include over-ceiling payments in the amount of $2,934.25."

I turn now to consideration of the defendant's contention in this series of cases in the Tax Court and in the full brief filed in the instant· case. The ·principal contention is that the Commissioner's disallowance of ·the actual cost to the taxpayer in determining the gross and net income is required by public policy. This is naturally an attractive argument to· present to a court; but it ·requires careful consideration as to what· is the. public policy that· is properly here involved. Certainly it was definitely contrary to public policy, because expressly prohibited by the Emergency Price Control Act of 1942, for the taxpayer to pay in excess of the ceiling prices. The applicable statute is the Emergency Price Control Act of 1942, ch. 26,' 56 Stat. 23, 50 U.S.C.A.Appendix. (1946 Ed.) Sec. 904 expressly provided that—"It shall be unlawful ·* * * for any person to sell or deliver any commodity, or in the course of trade or business to buy or receive any commodity * * * or otherwise to do or .omit to do any act, in violation of any regulation or order under section 2· or of any price schedule effective in accordance with the provisions of section 206, or of any regulation, order or requirement under section 202(b) or section 205(f), or to offer, solicit, attempt, or agree to do any of the foregoing."

And section 205 ·provided a criminal penalty for violations by a fine of not more

6. The opinion in the Sullenger case was by Judge Murdock. It was "reviewed by the court". Only one Judge (Disney) dis.sented. It appears that he did not thereafter dissent in any of the numerous cases later decided by the Tax Court on the particular point.

than $5,000 or imprisonment for not more than two years (or both) in certain cases. Other sections of the Act also provided civil penalties. But my attention has not been called to any provision in the Act which either expressly or impliedly amended the provision of the federal income tax statutes or authorized the Commissioner to interpret and apply the latter in the way he has done in this case.[7] In this connection it is relevant to note that in the Defense Production Act of 1950, 50 U.S.C.A.Appendix, § 2105,[8] authority was given to the President by Executive Order to authorize or require other governmental departments (including the taxing department of the government) to disregard payments of over-ceiling prices; but counsel have not called my attention to such an Executive Order as having been made by the President. And even if there were such an order it would seem legally improper to make it retroactive to apply to taxes for the years 1945 and 1946.

What is the proper public policy to be applied by the court in the instant case? There can hardly be a more definite public policy than the application, as plainly written, of the statutory law of the United States when within the boundaries of the Constitution. To give effect to the Commissioner's determination of the tax deficiency in this case is to impose on the taxpayer a civil obligation or penalty of over $17,000 contrary to the provisions of the taxing statutes as plainly written and as heretofore applied by the courts. It would seem to be clearly taking property without due process of law contrary to the Fifth Amendment.

This is not said out of any tenderness to the taxpayer in this case. Its action subjected itself to the criminal sanctions of the Act and if prosecuted would doubtless have

---

7. While it has not been referred to by counsel, I note that the Emergency Price Control Act of 1942 was amended by the Stabilization Act of Oct. 2, 1942, 56 Stat. 765, which reads as follows: "No employer shall pay, and no employee shall receive, wages or salaries in contravention of the regulations promulgated by the President under this Act. The President shall also prescribe the extent to which any wage or salary payment made in contravention of such regulations shall be disregarded by the executive departments and other governmental agencies in determining the costs or expenses of any employer for the purposes of any other law or regulation." 50 U.S.C.A. Appendix, § 965.

Pursuant thereto the President published Executive Order 9250, Fed.Reg. Vol. 7, No. 196, Oct. 6, 1942. Title 3 subsection 4 reads as follows: "In order to effectuate the purposes and provisions of this Order and the Act of October 2, 1942, any wage or salary payment made in contravention thereof shall be disregarded by the Executive Departments and other governmental agencies in determining the costs or expenses of any employer for the purpose of any law or regulation, including the Emergency Price Control Act of 1942, or any maximum price regulation thereof, or for the purpose of calculating deductions under the Revenue Laws of the United States or

for the purpose of determining costs or expenses under any contract made by or on behalf of the Government of the United States."

As I read the Amendment of the Emergency Price Control Act and the Executive Order thereunder, neither applies to the determination of what constitutes income under the taxing statute. See also N. A. Woodworth Co. v. Kavanagh, D.C.E.D.Mich.1952, 102 F.Supp. 9.

8. The relevant text of the Defense Production Act of 1950, subsection (a) reads as follows: "It shall be unlawful, regardless of any obligation heretofore or hereafter entered into, for any person to sell or deliver, or in the regular course of business or trade to buy or receive, any material or service, or otherwise to do or omit to do any act, in violation of this title (ss. 2101–2110 of this Appendix) or of any regulation, order, or requirement issued thereunder, or to offer, solicit, attempt or agree to do any of the foregoing. The President shall also prescribe the extent to which any payment made, either in money or property, by any person in violation of any such regulation, order, or requirement shall be disregarded by the executive departments and other governmental agencies in determining the costs or expenses of any such person for the purposes of any other law or regulation, including bases in determining for tax purposes."

908

resulted similarly to numerous other cases in this court where sanctions of the statute were imposed.

 Counsel for the Collector treats the over-ceiling payments as merely a "bribe" to induce the seller to sell. This characterization of the over-ceiling payments seems to be a misnomer whether considered in the dictionary or legal or commonly accepted sense of the word. There is nothing in the stipulation of facts to warrant the inference that the seller here was "induced" or "bribed" to sell. The whole purchase price was paid to the seller himself and the transactions were, other than the violation of the Price Act, in the ordinary course of trade. As the purchase was in the course of the taxpayer's business, which was to buy and sell at as large a profit as possible, it seems fanciful to suggest that the purchaser paid more than he was obliged to pay by the demands of the seller. But whether or not the over-ceiling prices are called a bribe, the important fact here, as shown by the stipulation, is that it did constitute a part of the actual price paid and was the cost of the cars purchased by the taxpayer from its respective sellers. This was regarded as the determining factor in the cases decided by the Tax Court despite the fact that the prices were paid in different ways and called by different names, such as "side payments"; "black market transactions" or "extra payments under the table". In the instant case it appears that the over-ceiling payments were made by the taxpayer to the respective sellers by giving the taxpayer's check for the amount of the ceiling price and a further payment to the seller made in cash. Records of the over-ceiling prices in all cases were kept and the total or actual cost price of each car entered on the taxpayer's books as cost of goods purchased. That such a course and practice of bookkeeping was subject to criticism is obvious but the Commissioner in this case did not assess any penalty therefor under the tax law. And it is not suggested that this court has any authority to do so. It may properly

shock the conscience of the court to find an otherwise reputable business man in flagrant violation of valid laws enacted for public good in war time, but this does not justify applying the somewhat uncertain contours of public policy in the purely mathematical computation of what constitutes income. The taxpayer cannot deny his receipt of income on the ground that it resulted from illegal transactions; but neither can the Commissioner find the existence of income where there is none by reason of illegality. United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037, 51 A.L.R. 1020; Commissioner v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752, 166 A.L.R. 884.

The defendant's principal reliance in support of its argument as to public policy is Lilly v. Commissioner, 4 Cir., 188 F.2d 269. In that case opticians by verbal arrangement with oculists agreed to pay a certain rate of commission to the oculists on charges made by the opticians for eye glasses sold to customers. The commissions so paid were in general secret so-called "kick backs" from the opticians to the oculists. In their tax returns the opticians deducted from the sale price of glasses paid by customers the commissions paid to oculists. The authority for the deductions was based on the provision of section 23(a) (1)(A) of the Internal Revenue Code, 26 U.S.C.A. § 23(a) (1) (A) as "ordinary and necessary business expenses." The Tax Court refused to allow the deduction and the Court of Appeals for this Circuit affirmed, in a careful opinion by Circuit Judge Dobie. The holding was that the secret practice was against public policy because it constituted highly unethical business practices which involved or tended to promote serious evils.[9]

 I do not think the principle of that case is applicable here (otherwise it would, of course, be imperative and conclusive authority for the decision of the instant case). As previously pointed out in this opinion, deductions under section 23 have an entirely different status in the statute from the

---

9. In this case certiorari was granted by the United States Supreme Court, 342 U.S. 808, 72 S.Ct. 45, and the case has been argued and submitted there, but not yet decided.

necessary mathematical computations to be made under section 22 to determine gross income. When gross income has been so determined then and then only does section 23 come into play by subtracting from gross income the deductions which (as a matter of grace) are allowed by the statute. The holding in the Lilly case was specifically placed on the court's construction of the phrase "ordinary and necessary expenses". There is no such question of statutory construction involved in the instant case. It may also be noted in passing that the Tax Court had reached the same conclusion in the case and it thus seems evident, at least to the Tax Court, that there is no inconsistency between the decision in the Lilly case and the long line of cases in the Tax Court above referred to where the holding with regard to nonapplication of public policy is the same as the conclusion herein reached. We are not dealing in this case with what constitutes a proper deduction under section 23.

For these reasons the conclusion of law is that the plaintiff is entitled to recover the sum sued for with legal statutory interest thereon. Counsel may submit the appropriate order for judgment in due course.