## COMMISSIONER OF INTERNAL REVENUE v. WEISMAN et al.

No. 4621.

United States Court of Appeals
First Circuit.

June 9, 1952.

Hilbert P. Zarky, Sp. Asst. to the Atty. Gen. (Ellis N. Slack, Acting Asst. Atty. Gen., and Lee A. Jackson, Sp. Asst. to the Atty. Gen., with him on the brief), for petitioner.

Arthur Gottlieb, Boston, Mass. (Joseph J. Gottlieb, Boston, Mass., with him on the brief), for respondents.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

These petitions for review of two cases in the Tax Court of the United States were on joint motion consolidated and heard by this court as a single case. The cases involve asserted deficiencies in individual income taxes and fraud penalty for the calendar year 1944, and in corporate income, declared value excess profits, and excess profits taxes, together with negligence and fraud penalties, for the fiscal year ended July 31, 1944. The petitioner is the Commissioner of Internal Revenue and the jurisdiction of this Court is invoked under § 1141(a) of the Internal Revenue Code, 26 U.S.C. § 1141(a), as amended.

The question, as stated by the petitioner, is whether or not payments made by a taxpayer in excess of the ceilings set by the Office of Price Administration are de-

ductible or are otherwise to be used as an offset in arriving at taxable income for the fiscal year ended July 31, 1944. The taxpayers state that the question is whether or not "side payments" for scrap automobile tires in excess of the ceiling prices established under the Emergency Price Control Act of 1942 may be included in the cost of materials, together with the amounts paid for materials at the established ceiling price, for the purpose of determining gross income, upon the resale of said materials by the purchaser.

The facts relevant to the issue may be briefly stated as follows: The corporate taxpayer, the Colonial Rubber Co., Inc., is a Massachusetts corporation having its place of business in Cambridge. During the taxable year it was engaged in the business of making rubber tire patches and reliners. For the purpose of making such commodities, it purchased scrap automobile tires, which were refabricated to separate the rubber from the fabric in the tires. The fabric was used to make blowout tire patches and tire reliners, and the scrap rubber was sold to concerns which reclaimed rubber.

The individual taxpayer, Benjamin Weisman, owned practically all the stock of the corporate taxpayer. He did business with the West Side Battery and Lead Company which dealt in scrap tires and it became a source of supply of scrap tires for Colonial.

The corporate taxpayer, through Weisman, knowingly made cash "side payments" of amounts in excess of the established O. P. A. ceiling price, in addition to the O. P. A. prices, at the rate of about 11 cents extra per tire. The total amount of cash "side payments" during the taxable year was found by The Tax Court to be $2934.25.

The Tax Court held that the case of Lela Sullenger, 11 T.C. 1076 (1948) is controlling and that Colonial's "costs of materials which were resold include over-ceiling payments in the amount of $2934.25" and that "Colonial Rubber Co. is entitled to include in its costs of materials entering into its costs of goods sold, the sum of $2934.25."

The Commissioner argues that this holding is erroneous and asks for a reversal. He asserts in substance that illegal expenditures for purchases in violation of price control law may not, to the extent that they exceed lawful prices, serve as a deduction or offsetting item in computing taxable income. He contends that the disregarding, in the tax computation, of illegal purchase payments in excess of lawful ceiling prices, is not unconstitutional and further that Congress did not intend that payments in excess of lawful ceiling prices should constitute an offsetting item in the tax computation.

The taxpayers' contentions are antithetical to those of the Commissioner. They maintain that there can be no legal assessment of the deficiency in taxes under the Sixteenth Amendment of the Constitution or under the Internal Revenue Code and that Congress did not intend that over-ceiling price payments should be disallowed.

We find it unnecessary to pass on the constitutional question raised here because we are of the opinion that Congress did not intend that such over-ceiling payments be disallowed. If it had intended that they be disallowed it could have done so as it did in § 405(a) of the Defense Production Act of 1950, as amended in 1951, 50 U.S.C.A. Appendix, § 2105(a). This section reads as follows:

"§ 2105. *Violation of title and regulations thereunder*

"(a) It shall be unlawful, regardless of any obligation heretofore or hereafter entered into, for any person to sell or deliver, or in the regular course of business or trade to buy or receive, any material or service, or otherwise to do or omit to do any act, in violation of this title or of any regulation, order, or requirement issued thereunder, or to offer, solicit, attempt or agree to do any of the foregoing. *The President shall also prescribe the extent to which any payment made, either in money or property, by any person in violation of any such regulation, order, or requirement shall be*

*disregarded by the executive departments and other governmental agencies in determining the costs or expenses of any such person for the purposes of any other law or regulation, including bases in determining gain for tax purposes."* (Italics supplied.)

The law prior to July 31, 1951 did not empower the President to prescribe the extent to which payments made in violation of price regulations, etc., may be disallowed by the government for tax and other purposes. The italicized portion of § 2105(a) did not appear in the 1950 Act although its counterpart did appear in § 2105(b) relating to the power of the President to prescribe the extent to which illegal wage payments shall be disregarded in determining costs or expenses of an employer. Likewise § 4(a) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 904(a), contained no such power as to over-ceiling payments although § 5(a) of the Stabilization Act of 1942, 50 U.S.C.A.Appendix, § 965(a), took cognizance of this "deterrent" and included such a directive in that Act as to wage payments to employees.

It is evident that Congress knew of this device as a deterrent in 1942 and in 1950 since it authorized the disallowance of illegal wage payments as a cost of doing business in the stabilization acts of those years. Yet it refrained from doing so in regard to payments for materials until 1951 in § 2105(a). The absence of Congressional action in this respect would seem to indicate that disallowance was deemed unnecessary except as to excessive wage payments. Furthermore, specific legislation on both matters would appear to have been unnecessary if a strong and sharply defined public policy were being thwarted or frustrated by taxpayers who offset such excessive costs for wages and materials. We are constrained to agree with the taxpayers that the plain inference is that until 1951, over-ceiling payments for materials were not to be disallowed as an item of "cost of goods". In doing so, we do not mean to imply that we approve of the taxpayers' violations of the price regulations. See Anderson Oldsmobile, Inc., v. Hofferbert, D.C., 102 F.Supp. 902.

The price control law provides sanctions for such violations and we are not convinced that Congress intended that they be supplemented by the tax laws in the manner suggested by the Commissioner here.

The Commissioner can get little support from the Treasury Regulations 111. Under § 29.21–1(a), 26 CFR 29.21–1(1), income is defined in the broad sense as " * * * all wealth which flows in to the taxpayer other than as a mere return of capital * * *." This is the crux of the problem as we see it and besets the issue with difficulties both constitutional and statutory as well as with difficulties presented by the very language of the regulations themselves as just indicated. Under § 29.22(a)–5, 26 CFR 29.22(a)–5, "Gross Income From Business * * * means the total sales, less the cost of goods sold, * * *."

In the instant case there is no dispute but that the taxpayers paid over-ceiling prices in the amount of $2934.25. The language of § 29.22(a)–5 of the Treasury Regulations 111, "less the cost of goods sold" is clear and unambiguous and we do not feel that it is our duty to read that phrase as "less the lawful cost of goods sold" as the petitioner would have us do. In Eisner v. Macomber, 252 U.S. 189, 206, 40 S.Ct. 189, 193, 64 L.Ed. 521, the court said:

"A proper regard for its genesis, as well as its very clear language, requires also that this amendment shall not be extended by loose construction, so as to repeal or modify, except as applied to income, those provisions of the Constitution that require an apportionment according to population for direct taxes upon property, real and personal. This limitation still has an appropriate and important function, and is not to be overridden by Congress or disregarded by the courts."

It must be remembered that we are construing a tax measure and not a penal statute. Furthermore, it is a tax on income and not a tax on gross receipts or capital which is under consideration here.

We are not concerned with deductions under § 23 of the Internal Revenue Code,

26 U.S.C. § 23, which by axiom are dependent upon legislative grace. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348. Even this concept has been interpreted favorably to the taxpayer in recent years. Thus, in Jerry Rossman Corporation v. Commissioner of Int. Rev., 2 Cir., 175 F.2d 711, the payment of a gross overcharge to the United States in one sum was allowed as a deduction since its allowance did not frustrate any sharply defined public policy. See Commissioner v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171. Cf. Lilly v. Commissioner, 343 U.S. 90, 72 S.Ct. 497.

Even if it were constitutionally sound for the Commissioner to disregard the illegal over-ceiling price increment as a part of "cost of goods" we would still have the problem of whether or not the inclusion of this increment in cost of goods frustrates any sharply defined public policy.

To say that such frustration results gives rise to the imputation that the enforcement provisions of the Emergency Price Control Act of 1942 were inadequate. In short, the argument runs, the price control program must have the assistance of the tax laws to deter "black market" operations. However desirable and useful such method may be, yet it should not be imposed in the circumstances here in the absence of clear Congressional authorization.[1]

We can only speculate as to why Congress in 1942 authorized a disallowance of excess wage payments as an item of cost and did not until 1951 authorize the disallowance of excess payments for goods. Aside from the serious constitutional question, perhaps it was thought that the deterrents supplied by the Emergency Price Control Act of 1942 and the Defense Production Act of 1950, such as refunds, treble damages and penalties, were adequate to implement price control. A distinct deter-

rent in respect to taxes was made in the Stabilization Act of 1942 as to excess wage payments. Again in 1950 it was reenacted. The recovery from employees of excess wage payments is obviously not so amenable to successful enforcement as the recovery from sellers of excess payments for goods sold at over-ceiling prices.

The Commissioner argues that the distinction between deductions and cost of goods is lacking in significance, is tenuous and diminishes tax liability unless the distinction is wiped out or disregarded. We disagree with this contention for we believe there is a real distinction between offsets, such as cost of goods under § 22 and deductions under § 23. It is not a difference without substance and has more support for its existence than being merely an historical accident. The return of capital is guaranteed by the "cost of goods" offset against gross receipts and thus is avoided the charge that it is a tax on capital and not on income. As indicated above, the tax under consideration is not a tax on gross receipts. Mertens' Law of Federal Income Taxation, Vol. 1, § 5.06, § 5.10.

The decisions of the Tax Court are affirmed.

MAGRUDER, Chief Judge (concurring).

I concur in the view, expressed in the court's opinion, that on the proper interpretation of the law and of the accompanying Treasury Regulation, the taxpayer here was entitled, in computing its gross income from business, to subtract from total sales the full cost to it of goods sold, even though the taxpayer violated a regulation under the Emergency Price Control Act by paying more than the established maximum price. But I hope the court's opinion will not give the impression that there is any serious doubt of the constitutional

1. The over-ceiling purchases here were made prior to the 1951 amendments to the Defense Production Act of 1950 so the application of § 2105(a), permitting disregard of payments made in violation of price regulations in determining costs, is not before us nor are the constitutional implications of that legislation. In pass-

ing, it may be noted that it is possible under the new statutory provisions (50 U.S.C.A.Appendix, § 2105(a)) that a merchant who buys all of his goods at over-ceiling prices might have the entire "cost of goods" item disallowed so that in effect the tax levied would amount to a gross receipts tax.

power of Congress to exclude from the offset so much of the cost of the goods sold as represented payment by the taxpayer in excess of the applicable ceiling price.

It may be that a merchant's gross receipts from sales of a commodity represent a return of capital, and not gross income, at least to the extent of the cost to the merchant of the goods sold. In this view, a tax by Congress on the merchant's gross receipts, as such, would not be a tax on income, sustainable under the Sixteenth Amendment. The question then would be whether such a tax fell within the general taxing power of Congress conferred by Article I, § 8, of the Constitution, or whether it would be deemed a "direct" tax which had to be laid in proportion to the population, as provided in Article I, § 9. See Spreckels Sugar Refining Co. v. McClain, 1904, 192 U.S. 397, 410 et seq., 24 S.Ct. 376, 48 L.Ed. 496. No such problem is presented here, for the tax now in question purports to be an income tax, in which the starting point for the computing of the tax is the taxpayer's "gross income", not his gross receipts, with no statutory qualification to cover the situation presented in this case. And the applicable Treasury Regulation defines "Gross income from business" as meaning, without qualification, "the total sales, less the cost of the goods sold".

The imposition of price controls, as provided in the Emergency Price Control Act of 1942 (56 Stat. 23), was within the constitutional power of Congress. Yakus v. United States, 1944, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834. Since Congress has power under Article I, § 8, to "make all Laws which shall be necessary and proper for carrying into Execution" all the powers vested by the Constitution in the Government of the United States, it would be within the incidental power of Congress, within broad limits, to provide what it deemed to be appropriate sanctions to secure compliance with the price control legislation.

Section 4(a) of the Emergency Price Control Act made it unlawful "for any person to sell or deliver any commodity, or in the course of trade or business to buy or receive any commodity," in violation of any price regulation issued pursuant to the authority of the Act. Section 205(b) of the Act provided that any person who willfully violated any provision of § 4 shall be guilty of a crime, and subject to fine or imprisonment, or both. A buyer who, in the course of trade or business, willfully bought a commodity at a price in excess of the ceiling price established in a price regulation, equally with the seller, was guilty of a crime. As an additional sanction in such a case, § 205(e) of the Act provided that the Price Administrator might bring a civil action on behalf of the United States to recover from the seller three times the amount of the overcharge. Since the buyer in the course of trade or business was also guilty of an unlawful act in paying more than the ceiling price, it would seem clear that Congress might, had it chosen, have provided a further sanction against the buyer too, subjecting him to a civil suit for recovery on behalf of the United States of three times the amount of his overpayment.

If Congress could have done the latter, as incidental to its power to provide appropriate sanctions for a price control program, it can hardly be doubted that it would have had power to provide a much less rigorous sanction against the buyer, by enacting that the merchant, in computing his gross income from business, may take as an offset to his gross receipts from sales only so much of the cost of the goods sold as might lawfully have been paid under the price regulation. Such an enactment would have required the merchant to pay to the United States, in the guise of a tax, somewhat more than he would have had to pay had he not been in violation of the price regulation. But the violator might consider himself lucky to be subjected to such a sanction, instead of being required to forfeit to the United States, in a civil action brought by the Price Administrator, three times the amount of the overpayment. It seems to me clear that Congress would have constitutional power to impose such a sanction, to be applied in the administration of the tax laws, whether or not Con-

gress would have power to impose a general tax on gross receipts, applicable to the law-abiding as well as to law violators.

But the flaw in the deficiencies asserted by the Commissioner in the case at bar is that for the tax year now in question, as the opinion of the court makes clear, Congress imposed no such additional sanction upon buyers who paid more than the ceiling prices, evidently considering the sanctions provided in the Emergency Price Control Act to be sufficient. It is not for the Commissioner or the courts to add a further sanction which Congress did not choose to provide.

The government's argument is not strengthened by reference to the matter of deductions from gross income. In § 23(a) (1) of the Internal Revenue Code, 26 U.S. C. § 23(a) (1), Congress has allowed the deduction from gross income, not of all trade or business expenses, but only of "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". This statutory language necessarily opens up a wide field for interpretation, as the line is drawn from case to case between what is and is not an "ordinary and necessary" business expense within the meaning of § 23(a) (1).