T.C. Memo. 2021-59

UNITED STATES TAX COURT

BRC OPERATING COMPANY LLC, BLUESCAPE RESOURCE COMPANY
LLC, TAX MATTERS PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

BLUESCAPE RESOURCES COMPANY LLC, BLUESCAPE RESOURCES
INVESTORS LLC, TAX MATTERS PARTNER, Petitioner v. COMMISSIONER
OF INTERNAL REVENUE, Respondent

Docket Nos. 12922-16, 12923-16.[1]          Filed May 12, 2021.

Charles W. Hall, Robert C. Morris, Andrew P. Price, and Richard L. Hunn,

for petitioners.

Jeffrey B. Fienberg, Travis Vance, Julie M. Holmes Chapel, and Ashley

Vaughan Targac, for respondent.

_____

[1] On April 12, 2017, we consolidated these cases for trial, briefing, and
opinion.

**[\*2]**                                     MEMORANDUM OPINION

PUGH, Judge:  These consolidated cases are before the Court on respondent's motion for partial summary judgment, and petitioners' motion for partial summary judgment.  In two notices of final partnership administrative adjustment (FPAA) dated March 7, 2016, respondent disallowed reported costs of goods sold for the tax years ending December 31, 2008 (tax year 2008), and December 31, 2009 (tax year 2009).  The crux of the dispute remaining between the parties is whether the economic performance requirement in section 461(h)(1)[2] applies to, and precludes recognition of, the estimated drilling costs reported as costs of goods sold for the tax years in issue.  As we explain below a resolution of the parties' dispute with respect to the reported estimated drilling costs turns on a more basic question about when a cost of goods sold offset may be recognized for tax purposes.

## Background

The following facts are from the parties' pleadings and other materials in the record and are not in dispute, except as noted.

_____

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

**[*3]**    BRC Operating Co., LLC (BRC), and Bluescape Resources Co., LLC (Bluescape), were organized as Delaware limited liability companies in 2008. During the tax years in issue BRC was wholly owned by Bluescape and was classified as a disregarded entity for Federal tax purposes.  Bluescape was a partnership for Federal tax purposes and used an accrual method of accounting.

During tax years 2008 and 2009 Bluescape paid approximately $180 million to acquire hundreds of thousands of acres of minerals and lease interests in West Virginia, Pennsylvania, Ohio, and Kentucky (leases).  Bluescape planned to explore for, mine, and produce natural gas for sale.  On its Forms 1065, U.S. Return of Partnership Income, Bluescape reported, as costs of goods sold, estimated drilling costs for natural gas exploration and mining.  The amounts in issue claimed as costs of goods sold are $100 million for tax year 2008 and $60 million for tax year 2009.[3]

---

[3] These amounts reflect stipulations by the parties in the stipulation of settled issues filed September 14, 2018, at docket No. 12923-16.

[*4]   Bluescape did not drill, receive drilling services from third parties, or receive drilling property during the tax years in issue.[4]  Bluescape reported no gross receipts or sales during these years attributable to the sale of natural gas.[5]

On March 7, 2016, respondent issued two FPAAs to Bluescape Resources Investors, LLC, as Tax Matters Partner for Bluescape, one for each of tax years 2008 and 2009.  Respondent disallowed the claimed costs of goods sold in their entirety, determining that Bluescape had not established that it satisfied the all-events test and the economic performance requirement in section 461(h)(1).[6]

---

[4] Petitioners allege Bluescape drilled two test wells in 2009; respondent does not explicitly stipulate that fact but does not challenge it either, and petitioners stated at the hearing that the test wells were not relevant to the motions.

[5] Bluescape reported no gross receipts of any kind for 2008 and reported $139,876 of delay rental payments for 2009.

[6] Respondent also issued an FPAA to BRC for tax year 2008, proposing an identical adjustment to 2008 cost of goods sold for estimated drilling costs.  BRC argues that, as a single-member disregarded entity, it cannot be classified as a partnership for Federal tax purposes and therefore the FPAA is invalid.  BRC did, however, file a partnership return for tax year 2008.  Under sec. 6233 and sec. 301.6233-1, Proced. & Admin. Regs., respondent may treat BRC as a partnership for the tax year for purposes of subchapter C of chapter 63 of the Code.  See Marcy v. Commissioner, T.C. Memo. 2018-42, at *10 ("The filing of a partnership return, even when an entity is not in fact a partnership, triggers the application of the TEFRA procedures unless the entity (or purported entity) is (or would have been) a 'small partnership'."); see also Bedrosian v. Commissioner, 143 T.C. 83, 104 (2014) (noting that under TEFRA an entity will not be considered a small partnership if any partner during the taxable year is a "pass-thru partner", such as

(continued...)

**[*5]**                                    <u>Discussion</u>

Respondent's motion for partial summary judgment asks us to sustain his

determinations disallowing Bluescape's reported costs of goods sold, advancing

two alternative theories.  First, respondent argues that the undisputed facts show

that economic performance under section 461(h)(1) did not occur with respect to

the reported costs of goods sold during the years in issue.  In the alternative

respondent argues that the reported costs of goods sold should be disallowed

because they were derived from Bluescape's use of a method of accounting that

failed to clearly reflect income.  Petitioners object.

Petitioners' motion for partial summary judgment asks us to rule that the

economic performance requirement in section 461(h)(1) does not apply to the

amounts claimed as costs of goods sold for the tax years in issue.  Respondent

objects.

---

[6](...continued)
partnership), <u>aff'd</u>, 940 F.3d 467 (9th Cir. 2019).  The identical adjustment is
before us in the FPAA to Bluescape, and therefore our decision on the validity of
the FPAA to BRC has no practical consequences.  Nor was this a point of
contention between the parties.  Nonetheless we must decide whether we have
jurisdiction over the FPAA to BRC at issue in docket No. 12922-16.  We conclude
that we do; we conclude that the FPAA to BRC is valid.

**[*6]** I. <u>Summary Judgment Standard</u>

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. <u>Fla. Peach Corp. v. Commissioner</u>, 90 T.C. 678, 681 (1988). A motion for partial summary judgment may be granted where there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a) and (b); <u>see</u> <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), <u>aff'd</u>, 17 F.3d 965 (7th Cir. 1994). Partial summary adjudication is proper where some but not all of the issues in the case may be disposed of summarily. Rule 121(b).

Where a motion for summary judgment has been properly made and supported, the nonmoving party "may not rest upon the mere allegations or denials of such party's pleadings" but must "set forth specific facts showing that there is a genuine dispute for trial" by affidavits or otherwise. Rule 121(d); <u>see</u> <u>Dahlstrom v. Commissioner</u>, 85 T.C. 812, 820-821 (1985). The moving party bears the burden of showing that there is no genuine dispute as to any material fact, and any factual inferences are drawn in a manner most favorable to the party opposing summary judgment. <u>See</u> <u>Dahlstrom v. Commissioner</u>, 85 T.C. at 821. "If there exists any reasonable doubt as to the [material] facts at issue, the motion must be denied." <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. at 520.

**[*7]** II.  Bluescape's Drilling Costs as Costs of Goods Sold

The dispute raised by the motions is whether the economic performance requirement in section 461(h)(1) applies to Bluescape's estimated drilling costs reported as costs of goods sold.  Respondent argues yes, citing the regulations.  E.g., sec. 1.61-3(a), Income Tax Regs. ("[A]n amount cannot be taken into account in the computation of cost of goods sold any earlier than the taxable year in which economic performance occurs with respect to the amount[.]").  Petitioners argue that the economic performance requirement does not apply because the regulations "extending" it to amounts included in cost of goods sold went too far.  Petitioners argue that, as an offset against gross receipts to arrive at gross income, cost of goods sold is an "item of gross income" the timing of which is governed by section 451 and the corresponding regulations, and therefore the economic performance requirement in section 461 does not apply.

After ample briefing on this dispute, the Court scheduled a hearing on the motions to pose a basic question to the parties:  Can Bluescape recognize costs of goods sold before it has any gross receipts from the sale of goods?  In other words do we even reach the question of whether costs of goods sold are subject to the economic performance requirement when there are no gross receipts to offset yet?  At the conclusion of the hearing we invited the parties to file a motion for leave to

[*8] file supplemental memoranda on this issue. The parties accepted the invitation, we granted their joint motion, and each party filed a supplemental memorandum.

The question before the Court is not whether the estimated drilling costs can ever give rise to costs of goods sold but whether they can give rise to costs of goods sold for the years in issue. Respondent argues that Bluescape is not entitled to recognize costs of goods sold for the years before the Court because it did not sell any goods or have any gross receipts related to the sale of natural gas. Petitioners, framing respondent's position as a "clear reflection of income" argument, argue that "matching" of cost of goods sold and gross receipts is not required. Thus, petitioners argue, they can recognize cost of goods sold as soon as they assume the obligations to drill the wells, giving rise to a loss that flows through to their partners.

We start our analysis of this question with an overview of the cost of goods sold offset. Under the Sixteenth Amendment to the Constitution, Congress may tax the gross income of a producer or reseller, not its gross receipts. See Doyle v. Mitchell Bros. Co., 247 U.S. 179, 185 (1918). Gross income is calculated by subtracting the cost of goods sold from gross receipts. Sec. 1.61-3(a), Income Tax Regs.

**[\*9]**   Cost of goods sold includes the "costs of acquiring inventory, through either purchase or production." Patients Mut. Assistance Collective Corp. v. Commissioner, 151 T.C. 176, 205 (2018), aff'd, __ F.3d __, 2021 WL 1570288 (9th Cir. Apr. 22, 2021); see also Reading v. Commissioner, 70 T.C. 730, 733 (1978), aff'd, 614 F.2d 159 (8th Cir. 1980); secs. 1.61-3(a), 1.162-1(a), Income Tax Regs.  The cost of goods sold offset against gross receipts ensures that there is not a tax on the return of capital.  See Commissioner v. Weisman, 197 F.2d 221, 224 (1st Cir. 1952) ("The return of capital is guaranteed by the 'cost of goods' offset against gross receipts and thus is avoided the charge that it is a tax on capital and not on income.").  Thus, the "'cost of goods sold' concept embraces expenditures necessary to acquire, construct or extract a physical product which is to be sold; the seller can have no gain until he recovers the economic investment that he has made directly in the actual item sold." Reading v. Commissioner, 70 T.C. at 733.  The regulations reflect this principle.  Section 1.61-3, Income Tax Regs., provides in part:

> (a) In general.  In a manufacturing, merchandising, or mining business, "gross income" means the total sales, less the cost of goods sold, plus any income from investments and from incidental or outside operations or sources. * * * The cost of goods sold should be determined in accordance with the method of accounting consistently used by the taxpayer. * * *

[*10] The parties do not dispute--and therefore we assume for purposes of the motions before us--<u>whether</u> the estimated drilling costs should be included in costs of goods sold; they dispute only <u>when</u>.

Cost of goods sold is calculated as the sum of the cost of beginning inventory and purchases (and other acquisition or production costs) during the tax year less the cost of ending inventory. <u>Huffman v. Commissioner</u>, 126 T.C. 322, 324 (2006), <u>aff'd</u>, 518 F.3d 357 (6th Cir. 2008); <u>see also</u> <u>Alterman v. Commissioner</u>, T.C. Memo. 2018-83 (holding taxpayer's method of computing cost of goods sold improper when taxpayer considered only purchase and production costs and not beginning and ending inventory); <u>see also</u> secs. 1.162-1(a), 1.446-1(a)(4)(i), 1.471-1, Income Tax Regs.[7] The taxpayer must retain records sufficient to substantiate the reported cost of goods sold. <u>See</u> sec. 6001; <u>Newman v. Commissioner</u>, T.C. Memo. 2000-345. For instance, the Court has disallowed cost of goods sold when a taxpayer fails to present evidence of net sales, or beginning or ending inventory. <u>See</u> <u>Petzoldt v. Commissioner</u>, 92 T.C. 661, 698 (1989) (sustaining disallowance of cost of goods sold offset when

_____

[7] And under certain circumstances not relevant here the taxpayer may value closing inventory at the lower of cost or market. <u>See</u> <u>W.C. & A.N. Miller Dev. Co. v. Commissioner</u>, 81 T.C. 619, 632-633 (1983); secs. 1.471-2(c), 1.471-4, Income Tax Regs.

**[\*11]** taxpayer did not provide records to determine net sales or inventory); <u>Chico v. Commissioner</u>, T.C. Memo. 2019-123, at \*25 (sustaining disallowance of cost of goods sold offset because taxpayers presented invoices for materials but no information regarding beginning and ending inventory).

Cost of goods sold generally is determined under section 471 and the accompanying regulations. <u>See</u> secs. 1.471-3, 1.471-11, Income Tax Regs. Producers must include in cost of goods sold both the direct and indirect costs of creating their inventory. <u>See</u> secs. 1.471-3(c), 1.471-11, Income Tax Regs. Section 471 and its regulations also direct taxpayers to section 263A for additional rules. Under section 263A, a taxpayer is not allowed to deduct currently the direct or indirect costs of personal property produced by the taxpayer. <u>See</u> sec. 263A(a)(1), (b)(1). Instead, these costs must be capitalized or included in inventory costs. <u>See</u> <u>id.</u> subsec. (a)(1).

Generally, cost of goods sold is not allowable unless, and until, the taxpayer actually sells or disposes of goods. <u>See</u> <u>Patients Mut. Assistance Collective Corp. v. Commissioner</u>, 151 T.C. at 205 ("But when accounting for COGS \* \* \* [as opposed to deductions, taxpayers] have to capitalize an item's cost in the year of acquisition or production and either amortize it or wait until the year the item's sold to make the corresponding adjustment to gross income."); <u>see also</u> <u>Jones v.</u>

**[\*12]** <u>Commissioner</u>, 25 T.C. 1100, 1102-1104 (1956) (holding that the taxpayer could not recover cost of goods sold until the goods were sold or otherwise disposed of), <u>rev'd on other grounds</u>, 259 F.2d 300 (5th Cir. 1958). This principle is illustrated by <u>Bernard v. Commissioner</u>, T.C. Memo. 1998-20, 1998 WL 17621, and <u>Weaver v. Commissioner</u>, T.C. Memo. 2004-108, 2004 WL 938293.

In <u>Bernard v. Commissioner</u>, 1998 WL 17621, the Court held that a taxpayer starting a model train store was not entitled to cost of goods sold reported on Schedule C, Profit or Loss From Business, because the model train store had not yet begun selling goods to customers during the tax year in issue. In 1994 the taxpayer quit his job to start a model train store and acquired $56,218 in inventory with the hope of beginning sales during the upcoming holiday season. <u>Id.</u> at \*1. Because of delays in acquiring retail space, he did not open the store during 1994 and instead stored the inventory in his home, selling only a few items to family and friends until he could find retail space during the following year, 1995. <u>Id.</u> Because the taxpayer did not sell any goods in 1994, the Court held that he could not recover cost of goods sold for 1994. <u>Id.</u> at \* 2. The Court also rejected his alternative argument for recovering cost of goods sold--that the inventory became worthless during 1994--because the taxpayer did not offer the inventory for sale or

[*13] otherwise provide any evidence that the market price for the yearend inventory was less than cost.  Id.

Similarly, in Weaver v. Commissioner, 2004 WL 938293, the Court rejected the notion that a taxpayer could claim cost of goods sold in the absence of gross receipts or sales of goods.  There, a married couple reported on a Schedule C for an "automobile construction" business zero gross receipts or sales, $374,885 of cost of goods sold, and $73,235 of expenses, for a total loss of $448,120.  Id. at *2.  Because the business did not sell any goods in the relevant year, the Court treated the taxpayers' claim of cost of goods sold as a claim for additional section 162 business expense deductions, explaining:

> [E]ven where otherwise appropriate, cost of goods sold generally is not allowable with respect to goods that have not been sold or otherwise disposed of during the taxable year.  Jones v. Commissioner, 25 T.C. 1100, 1103-1104, 1956 WL 805 (1956), revd. on other grounds 259 F.2d 300 (5th Cir. 1958); Bernard v. Commissioner, T.C. Memo. 1998-20.  Because petitioners in any event reported no gross receipts for Shrike Cars and offered no evidence indicating that any goods were disposed of by the venture, and because the parties did not distinguish at trial or on brief between the various components of the Shrike Cars loss, we shall treat the $374,885 amount as a claim for additional business expenses under sec. 162.  See Keegan v. Commissioner, T.C. Memo. 1997-511 (considering reported cost of goods sold to be a claim for sec. 162 expenses).

Id. n. 2.

**[\*14]** <u>Bernard</u> and <u>Weaver</u> illustrate what is obvious from the phrase "cost of goods sold" itself: "goods sold" are generally a prerequisite to recognizing cost of goods sold. And these cases illustrate the basic flaw in petitioners' position: Bluescape had no gross receipts from the sale of goods to offset. Cost of goods sold does not exist in a vacuum, as a stand alone deduction in the Code, but serves as an offset against gross receipts. <u>See</u> <u>Sullenger v. Commissioner</u>, 11 T.C. 1076, 1077 (1948) ("Section 23 [now section 162] makes no provision for the cost of goods sold, but the Commissioner has always recognized, as indeed he must to stay within the Constitution, that the cost of goods sold must be deducted from gross receipts in order to arrive at gross income. No more than gross income can be subjected to income tax upon any theory."); sec. 1.61-3, Income Tax Regs.

Petitioners do not cite, nor could we find, any cases that allowed an offset for cost of goods sold as a stand alone deduction in advance of any gross receipts; rather cost of goods sold was allowed only as an offset against gross receipts from the sale of goods.[8] Indeed, that is the foundation on which petitioner's argument against application of the economic performance requirement rests. That is, petitioners argue that cost of goods sold is not subject to the economic performance requirement under section 461(h) because cost of goods sold offsets

---

[8] The exceptions--which we discuss below--illustrate this broader premise.

**[*15]** gross receipts for purposes of computing gross income under section

1.61-3(a), Income Tax Regs., and hence is an "item" of gross income, the timing

of which is governed by section 451.  Petitioners' own formulation thus confirms

that cost of goods sold is not a stand alone deduction but rather serves as an offset

against gross receipts.

Petitioners' argument that cost of goods sold need not "match" gross

receipts cannot bridge the gap in their logic.  First, petitioners cite Hezel v.

Commissioner, T.C. Memo. 1985-10, as an example where "the [C]ourt allowed a

taxpayer to adjust * * * [cost of goods sold] for labor costs associated with the

taxpayer's business despite the fact that the taxpayer did not have any sales of

inventory during the tax year in issue".  That is not so.  In Hezel the taxpayer, an

individual, paid $20,000 in 1977 to acquire an obsolete mail conveyer system in

order to salvage the equipment and resell it.  In 1978 the taxpayer claimed

approximately $15,000 of cost of goods sold without reporting any sales, and

initially, the Commissioner disallowed the entire amount.  But after discovery, the

Commissioner conceded a deduction of approximately $1,300 for labor costs that

had been claimed by the taxpayer as a part of cost of goods sold.  Thus, the labor

costs were not even before the Court.  And the Court ruled in the Commissioner's

favor with respect to the claimed cost of goods sold remaining after concessions

**[\*16]** (approximately $13,700 for equipment purchases, supplies, and inventory shrinkage).

Petitioners also cite Van Pickerill & Sons, Inc. v. United States, 445 F.2d 918 (7th Cir. 1971), as part of this argument that they need not "match" accrued drilling costs to gross receipts from the sale of goods. But in that case the taxpayer avoided "matching" of certain costs to sales by claiming those costs as expense deductions, not as cost of goods sold. Specifically, the court rejected the Commissioner's position that a whisky distributor must add costs for storage, State taxes, and insurance premiums to cost of goods sold and offset cost of goods sold against gross receipts at the time of sale of the whisky. The taxpayer successfully argued that its practice of current expensing of such costs was a permissible method of accounting. Crucially, the "taxpayer hinge[d] his argument on the impropriety of characterizing the charges as costs of acquisition [of the whisky]." Id. at 920. Here, by contrast, petitioners take the position that Bluescape's estimated drilling costs are not deductible expenses but costs included in cost of good sold--that is, that the expenses are part of the cost of acquiring the natural gas. This position is how they claim to avoid the economic performance requirement. But it is also what requires them to wait until there are gross receipts

**[*17]** against which to offset cost of goods sold.  Van Pickerill & Sons therefore highlights the inconsistency of petitioner's position.

Cases petitioners cite involving stolen or worthless inventory likewise miss the mark.  For instance, petitioners cite Nat'l Home Prods., Inc. v. Commissioner, 71 T.C. 501, 530-532 (1979) (holding that the taxpayer could reduce its ending inventory in the cost of goods sold computation by the amount of stolen inventory and thus claim the amount of the inventory loss as a part of its cost of goods sold), C-O-Two Fire Equip. Co. v. Commissioner, 219 F.2d 57 (3d Cir. 1955) (holding that the taxpayer could offset a loss in 1946 for obsolete inventory on a totally failed business venture by writing down ending inventory for the year of the loss), rev'g 22 T.C. 124 (1954), and United States v. Kollman, 105 A.F.T.R. 2d 2010-1331 (D. Ore. 2010) (holding that the taxpayer was entitled to a deduction for worthless inventory after Government regulation made certain inventory unmarketable).  Petitioners also point out that a taxpayer may write down the cost of ending inventory to "market" in certain situations if the taxpayer is using the lower of cost or market method.  See secs. 1.471-2(c), 1.471-4, Income Tax Regs.; see also Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 533-537 (1979) (describing the lower of cost or market method).  But petitioners did not allege

**[\*18]** that Bluescape had inventory that was stolen or lost value, or that it was using the lower of cost or market method. Therefore, these authorities are no help.[9]

Third, petitioners' reliance on <u>Garth v. Commissioner</u>, 56 T.C. 610 (1971), is misplaced. Petitioners cite <u>Garth</u> as an example where "the taxpayer was allowed to claim the costs of raising chickens in years prior to the years in which the taxpayer's inventory of chicken eggs or chickens were sold". But the taxpayer in <u>Garth</u> was in business for approximately five years before the tax year in issue, and during the year in issue the taxpayer was actively engaged in the production and sale of eggs and hens. There is no indication that the taxpayer in <u>Garth</u> attempted to recognize cost of goods sold for a tax year in which the taxpayer had no gross receipts from the sale of inventory.

Finally, petitioners' attempt to block partial summary judgment by arguing that this is a fact-intensive "clear reflection of income issue" not appropriate for

---

[9] We do not express an opinion on whether a taxpayer who writes down ending inventory for stolen, worthless, or obsolete goods could recognize cost of goods sold in the absence of gross receipts from the sale of goods. Neither do we express an opinion on whether a taxpayer using the lower of cost or market method could recognize cost of goods sold in the absence of gross receipts from the sale of goods. The facts before us do not raise these issues.

[*19] summary judgment is unavailing.[10]  The only facts material to our analysis

of whether the costs in issue should be recognized for the years in issue as part of

costs of goods sold are that Bluescape did not receive or report any gross receipts

from the sale of natural gas or other goods or inventory during the years in issue.

And that is not disputed.

In arguing that partial summary judgment is not available after casting

respondent's position as a clear reflection challenge, petitioners assert that they

will present evidence at trial bearing on whether their method of accounting

_____

[10] Under sec. 446(b), the Commissioner has broad authority to challenge a taxpayer's method of accounting as failing to clearly reflect income.  See Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532 (1979) ("[I]t is obvious that on their face, §§446 and 471, with their accompanying Regulations, vest the Commissioner with wide discretion in determining whether a particular method of inventory accounting should be disallowed as not clearly reflective of income."); Commissioner v. Hansen, 360 U.S. 446, 467 (1959) ("The Commissioner has broad powers in determining whether accounting methods used by a taxpayer clearly reflect income[.]"); Rockwell Int'l Corp. v. Commissioner, 77 T.C. 780, 808 (1981) ("Since the Commissioner has '[m]uch latitude for discretion,' his interpretation of the statute's clear-reflection standard 'should not be interfered with unless clearly unlawful.'" (alteration in original) (quoting Lucas v. Am. Code Co., 280 U.S. 445, 449 (1930))), aff'd, 694 F.2d 60 (3d Cir. 1982).  Whether a method of accounting clearly reflects income is a question of fact to be determined on a case-by-case basis.  Howard Hughes Co., LLC v. Commissioner, 142 T.C. 355, 376 (2014), aff'd, 805 F.3d 175 (5th Cir. 2015); Ford Motor Co. v. Commissioner, 102 T.C. 87, 91-92 (1994), aff'd, 71 F.3d 209 (6th Cir. 1995). Consequently, we have held that cases deciding whether a taxpayer's method of accounting fails to clearly reflect income generally are not suitable for summary judgment.  Dayton Hudson Corp. & Subs. v. Commissioner, 101 T.C. 462, 466 (1993).

[*20] clearly reflected income, including: the precise terms of the leases; several actions taken in 2008 and 2009 to "preserve and enhance" the values of the leases, including drilling two test wells in 2009 and infrastructure development; work done by third party engineering companies to evaluate the test wells in 2009; generally accepted principles for the particular trade or business; and how Bluescape's method of accounting was consistently applied over the years. But none of these facts is material to the issue of whether Bluescape had any gross receipts from the sale of goods during the years in issue. In Bernard and Weaver, discussed above, we rejected--without reference to clear reflection of income--the argument that a taxpayer may recover cost of goods sold when the taxpayer had no gross receipts from the sale of goods. Petitioners cannot fend off partial summary judgment on this fundamental legal question by invoking clear reflection of income; without disputed material facts this becomes a red herring.[11]

In sum, we conclude that to recover cost of goods sold a taxpayer generally must have some gross receipts from the sale of goods to offset. Because

---

[11] To be clear, respondent did argue in his motion, as an alternative to his sec. 461(h)(1) argument, that Bluescape's reported costs of goods sold should be disallowed because it used a method of inventory accounting that failed to clearly reflect income. We need not reach that argument here because we hold that, without gross receipts from the sale of goods, Bluescape may not recover its estimated drilling costs as costs of goods sold.

[*21] Bluescape had no gross receipts from the sale of natural gas for the years in issue, the estimated drilling costs reported as "cost of goods sold" are not allowable as a cost of goods sold offset to gross receipts.

Accordingly, we sustain respondent's disallowance of Bluescape's estimated drilling costs reported as costs of goods sold for tax years 2008 and 2009. We do not reach the parties' dispute over whether the economic performance requirement in section 461(h)(1) applies to Bluescape's estimated drilling costs.[12] Therefore, we will deny petitioners' motion as moot.

III. Conclusion

In sum, we will deny petitioners' motion for partial summary judgment because Bluescape's reported estimated drilling costs are not costs of goods sold

---

[12] We note that petitioners' position is that Bluescape should be able to take into account its estimated drilling costs as costs of goods sold for tax years 2008 and 2009 and we have confined our analysis to this question. Petitioners do not argue that those costs should give rise to sec. 162 deductions. And on brief petitioners belabor the distinctions between costs of goods sold "offsets" to gross receipts and deductions against gross income in arguing that sec. 461(h)(1) should not apply to costs of goods sold. We do not read their alternative argument that they satisfy the economic performance requirement to change their characterization of the expenses as costs of goods sold. We therefore will not consider recharacterizing Bluescape's reported costs of goods sold as claims for sec. 162 deductions in the same amounts, as the Court did in Weaver v. Commissioner, T.C. Memo. 2004-108.

[*22] for Federal tax law purposes. Therefore, we need not consider petitioners' arguments concerning the application of section 461(h)(1) to cost of goods sold.

We will grant respondent's motion for partial summary judgment based on the reasoning in this opinion. On the basis of the undisputed facts before us, petitioners were not entitled to recognize cost of goods sold for tax year 2008 or 2009.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.