## MINE HILL & SCHUYLKILL HAVEN R. CO. v. SMITH.

### Nos. 10171, 10172.

United States Court of Appeals
Third Circuit

Argued June 9, 1950.

Decided Oct. 4, 1950.

Morse Garwood, Philadelphia, (Harold Evans, Philadelphia, Pa., MacCoy, Evans & Lewis, Philadelphia, Pa., on the brief), for appellant.

Harry Baum, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., and Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before MARIS, GOODRICH and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

These are appeals from judgments for the defendant entered by the District Court in two actions brought by the Mine Hill & Schuylkill Haven Railroad Company ("taxpayer") for the recovery of income taxes.

The cases involve a common question, but different tax years. They were consolidated for trial in the Court below and for argument in this Court.

The facts as stipulated and found by the District Court may be summarized as follows:

Taxpayer owns certain railroad lines in eastern Pennsylvania which are leased to the Reading Company under a 999 year lease entered into in 1896. The lease required the Reading Company to maintain the lines in good order and repair, but expressly excepted from this requirement any lines or portions thereof "which are or may be from time to time used exclusively by any one colliery which is now or may hereafter be abandoned, or the working thereof may be discontinued, or which does not furnish and supply sufficient traffic to pay the needful repairs and expenses of the portion of said railroad leading to said colliery."

No. 10,171

In 1941 taxpayer and the Reading Company jointly filed an application with the Interstate Commerce Commission for a certificate of public convenience permitting taxpayer to abandon certain branch lines of a total distance of 5.89 miles. The application and Return to Questionnaire stated that these lines had not been operated or maintained since 1933, that practically all the ties were decayed and a substantial part of the rails and track materials had been stolen, that there had been no train service or traffic over them for many years, and that the collieries which these lines were constructed to serve had been abandoned for some years.[1]

---

1. The application set forth the following reasons for requesting the certificate:
"(a) As shown in answer to Question

No. 2, the branches and portions of branches involved in this application were constructed and have been used exclusively

In 1942 the Interstate Commerce Commission granted the application on the grounds requested and issued a certificate of convenience authorizing taxpayer and the Reading Company to abandon the lines.[2]

In its income tax return for 1942 taxpayer claimed a loss deduction of $95,078.05, on the theory that the lines had been abandoned in that year. The amount of loss claimed represented taxpayer's investment in the lines less salvage value. The Commissioner disallowed the claim. The taxpayer then paid the resulting deficiency and when its claim for refund was rejected brought suit in the District Court.

### No. 10,172

In 1943 taxpayer and the Reading Company jointly filed another application with the Interstate Commerce Commission for a certificate of public convenience permitting taxpayer to abandon a certain branch line of a total distance of 2.06 miles. The application and Return to Questionnaire stated that the line had not been operated or maintained for the past 12 years, the track proposed to be abandoned was in a poor state

of maintenance with some of the rails and ties missing, that there had been no train service or traffic over it for many years, and that the colliery served by it had long since been abandoned.[3]

Within the same year the Interstate Commerce Commission granted the application on the grounds requested and issued a certificate of convenience authorizing taxpayer and the Reading Company to abandon the line.[4]

In its income tax return for 1943 taxpayer claimed a loss deduction of $69,324.28, on the theory that the line had been abandoned in that year. The amount of loss claimed represented taxpayer's investment less estimated salvage value. Actual salvage exceeded the estimated salvage, reducing the claimed loss to $68,060.22. The Commissioner disallowed the loss. Taxpayer paid the resulting deficiency and when its claim for refund was rejected, brought suit in the District Court.

### Discussion

The crux of the issue presented to the District Court was when the losses resulting

to serve anthracite collieries and washeries which have been abandoned for some years. * * *

"(b) No train service has been operated for the past seven to thirteen years over the lines of railroad which applicants here seek to abandon, and no need for future train service over these lines is anticipated.

"(c) Applicants desire to salvage the rails and other track materials remaining on the lines of railroad in question before they are stolen."

The Return to Questionnaire stated in reply to Question 4 (Exhibit 3): "Practically all the ties on the portions of line here sought to be abandoned are decayed and a substantial part of the rails and track materials has been stolen."

2. The certificate recited that: "The collieries located on the segments have been abandoned for many years. The last train movement over any portion of the lines sought to be abandoned was more than seven years ago. Since discontinuance of service, maintenance has been neglected, practically all the ties have decayed, and a substantial part of the rail and track material has been stolen. The total net salvage value of the recoverable material is estimated by the applicants to

be $5,096. There are no stations on the lines, and few, if any, inhabitants in the territories tributary thereto."

3. The application set forth the following reasons for requesting the certificate: "Applicants desire to abandon the line since it no longer serves any industry, train service has not been operated thereover within the last twelve years, and applicants desire to salvage the rails and other track materials remaining in the line so as to put the same to economic use and to prevent theft thereof."

The Return to Questionnaire stated in reply to Question 4 (Exhibit 3): "The track proposed to be abandoned is in a poor state of maintenance with some of the rails and ties missing."

4. The certificate recited that: "The anthracite colliery formerly served long since has been abandoned, and no trains have operated over the line for at least 12 years. Few, if any, inhabitants reside in the tributary territory, and no one is dependent upon the line for transportation service. In its isolated location the track materials are subject to theft, and the applicants desire to salvage such rails and fastenings as may still remain for use on other parts of their system or for scrap purposes."

from the abandonment of the branch lines involved actually occurred. The taxpayer claimed that they occurred in the years in which the Interstate Commerce Commission issued certificates of convenience authorizing taxpayer and the Reading Company to abandon the lines. The District Court subscribed to the prior determination of the Commissioner of Internal Revenue that the lines were actually abandoned in years preceding the action of the Interstate Commerce Commission.[5]

Applicable to the issue are the following well-settled principles:

To be deductible losses of the type asserted by the taxpayer must have been sustained *in fact* during the taxable year;[6] determination of the year of loss calls for "a practical, not a legal, test" and requires a consideration of all pertinent facts and circumstances, regardless of their objective or subjective nature; the standard for determining the year for the deduction of a loss "is a flexible one, varying according to the circumstances of each case"; the taxpayer's conduct and attitude are to be considered but they are not decisive; the taxpayer has the burden of establishing that a claimed deductible loss was sustained in the taxable year; the question as to the year when the loss was sustained *is purely one of*

*fact* to be determined in the first instance by the trier of the facts; the circumstance that the facts are stipulated does not make the issue any less factual in nature; the trier of the facts is entitled to draw whatever inferences and conclusions it deems reasonable from such facts; it is immaterial that different conclusions might fairly be drawn from the undisputed or stipulated facts and the appellate court is *limited* to a consideration whether the fact finding was "clearly erroneous" and the decision of the trial court was "in accordance with law";[7] and finally, the requirements of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., are not determinative of liability under the Revenue Act.[8]

We must immediately note, in applying the principles stated to the situation here, that it is our function merely to determine whether the District Court erred as a matter of law and whether its fact-finding was "clearly erroneous".

The substance of the taxpayer's position is (1) the taxpayer had no knowledge that the branch lines in question were not being maintained; (2) there was nothing in the record to sustain the District Court's finding that the taxpayer or its lessee intended to abandon prior to the Interstate Commerce Commission proceedings; (3) there

5. The opinion of the District Court in No. 10,172 is reported at 88 F.Supp. 803. The opinion in No. 10,171 is not reported.

6. Section 23(f) of the Internal Revenue Code, 26 U.S.C.A. § 23 authorizes a deduction from gross income of "losses sustained during the taxable year and not compensated for by insurance or otherwise."

Section 29.23(e)-1 of Treasury Regulations 111 provides that the loss must be "actually sustained during the taxable period for which allowed", and "substance and not mere form will govern in determining taxable loss".

Section 29.23(e)-3 of the Regulations provides that in the case of "Loss of Useful Value" of business assets, the difference between the basis of the property and its salvage value may be claimed for the year in which the loss occurs, "When, through some change in business conditions the usefulness in the business of some or all of the capital assets is suddenly terminated, so that the taxpayer

discontinues the business or discards such assets permanently from use in such business."

Section 29.23(f)-1 makes the relative provision of Sec. 29.23(e) applicable to corporations as well as individuals.

7. Boehm v. Commissioner I. R., 1945, 326 U.S. 287, 292, 293, 66 S.Ct. 120, 124, 90 L.Ed. 78, 166 A.L.R. 708, rehearing denied, 326 U.S. 811, 66 S.Ct. 468, 90 L.Ed. 495; Lucas v. American Code Co., 1930, 280 U.S. 445, 449, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010; Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.; United States v. U. S. Gypsum Co., 1948, 333 U.S. 364, 394, 395, 68 S.Ct. 525, 92 L. Ed. 746; United States v. Yellow Cab Co., 1949, 338 U.S. 338, 341, 342, 70 S.Ct. 177.

8. Old Colony R. Co. v. Commissioner I. R., 1932, 284 U.S. 552, 562, 52 S.Ct. 211, 76 L.Ed. 484; Kansas City Southern Ry. Co. v. Commissioner of I. R., 8 Cir., 1931, 52 F.2d 372, certiorari denied 284 U.S. 676, 52 S.Ct. 131, 76 L.Ed. 572.

must be a coincidence of intention to abandon with the act of abandonment and proof of non-use is not alone sufficient; and (4) there could not have been a lawful abandonment of the branch lines without the permission of the Interstate Commerce Commission under the terms of the Interstate Commerce Act as amended by the Transportation Acts of 1920 and 1940, and consequently the years of abandonment were the years in which the Commission granted its permission.

As to taxpayer's first point it is only necessary to state that under the principles cited its lack of knowledge, assuming it to be so, was not decisive on the question of abandonment. As to its second point, which demonstrates disagreement with the District Court's fact finding, we need only state that we do not find such finding "clearly erroneous" in view of the disclosure in the record that the rail lines had not been used for many years following abandonment of the collieries which they had served; that the railroad ties were decayed and a substantial part of the rails and track materials had been stolen. As to taxpayer's third and fourth points, which are based on its view of the law, we need only state as to the former that under Boehm v. Commissioner of I. R., cited in Footnote 7, there need not be a coincidence of intention of abandonment with the act of abandonment and that the act alone is sufficient, and as to the fourth point, that under Old Colony R. Co. v. Commissioner of I. R. and Kansas City Southern Ry. Co. v. Commissioner of I. R. cited in Footnote 8, the requirements of the Interstate Commerce Act are not, as previously pointed out, determinative of liability under the Revenue Act.

In sum, upon consideration of the record, the District Court's findings of fact and its clear and exhaustive discussion of the testimony and applicable law, we are of the opinion that the taxpayer has failed to establish either error of law or such clear error of fact as would require reversal.

For the reasons stated the judgments of the District Court will be affirmed.