**C–O–TWO FIRE EQUIPMENT COM-
PANY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL
REVENUE, Respondent.**

No. 11406.

United States Court of Appeals,
Third Circuit.

Argued Jan. 4, 1955.

Decided Feb. 2, 1955.

———◆———

Chester Rohrlich, New York City,
(Lehman, Goldmark & Rohrlich, New
York City, on the brief), for petitioner.

Joseph F. Goetten, Washington, D. C.
(H. Brian Holland, Asst. Atty. Gen.,
Ellis N. Slack, Joesph F. Goetten, Sp.
Assts. to the Atty. Gen. on the brief)
for respondent.

Before MARIS, GOODRICH, and
STALEY, Circuit Judges.

GOODRICH, Circuit Judge.

This is a tax case in which the question
involved depends upon when part of the
taxpayer's inventory became obsolete.
If this happened in 1946 the taxpayer
may carry back its loss for that year to
reduce its 1944 tax liability and that is
what it wants to do. The tax court found
that the material in question became ob-
solete in 1947, 22 T.C. 124. Whether
that finding is correct is the sole point in
the case.

We said in Mine Hill & Schuyl-
kill Haven R. Co. v. Smith, 3 Cir., 1950,
184 F.2d 422, certiorari denied 1951, 340
U.S. 932, 71 S.Ct. 496, 95 L.Ed. 673, and
reiterate here, that the question of the
year when a loss is sustained is one of
fact. There was a very elaborate set of
findings of fact made for this case by a
commissioner and many of these findings
were, in turn, also found by the tax court.
We are going to reverse the tax court be-
cause we think that the facts found by it
do not sustain the conclusion at which it
arrived, namely, that the taxpayer's in-
ventory became obsolete in 1947 and not
in 1946.

We shall try to summarize what we
think are the critical findings out of a
rather elaborate history of the taxpayer's
joys and sorrows which are reported in
1954, 22 T.C. 124. The taxpayer is a
company primarily interested in the

manufacture and sale of fire extinguishing material. Toward the end of the war it felt that the demand for this material might slacken and it sought some other outlet for its business activities. It was persuaded to go into the business of manufacturing and selling an instrument called a "Phonette." This gadget was to be placed in booths and on counters in restaurants and similar places. When induced by dropping a nickel in its slot the phonette would give the purchaser six minutes of recorded music played from a central station and connected with the instrument by telephone. The talking point for its success was that many phonettes in one establishment could be working at one time without having the music therefrom, as in the ordinary "juke box," pervade the whole room.

The venture proved highly unsuccessful. Manufacturing of the phonette was started in January, 1946, and the total production until November 12, 1946, when all production ceased, was 44,769 instruments. These were sold through a subsidiary corporation called "Personal Music." Toward the end of October, 1946, petitioner and its sales corporation had reports that the product was not being received favorably. In the next month the financing company which had been handling time purchases gave notice that it would no longer finance any sales of the phonettes. This action was based on the company's poor experience with phonette purchasers. In December, 200 instruments were sold and 2,176 were returned. The findings of fact say that "petitioner's officers were convinced that the nickel box was obsolete at the end of 1946." The findings also say expressly, "the phonette business was in perilous state in November or December 1946, from want of a market."

If the history had ended there we have no doubt that the tax court would have found that all of the taxpayer's inventory for producing phonettes was reducible to salvage value by the end of 1946. The events which took place in the management of the company that month and the first month of the succeeding year induced the tax court to reach a different conclusion. With that hope that springs eternal in the human breast the management of C-O-Two was talked into trying another experiment. They were talked into this by the man who promoted phonette and got the company into the business in the first place. The suggestion was that instead of a nickel box they should manufacture a box which would accommodate both a nickel and a dime. In the light of hindsight it seems an amazing business mistake ever to have made, as the findings of fact report the company officials as admitting.

Nevertheless, the taxpayer went ahead and made twelve very fancy nickel-dime instruments which were exhibited at a trade show held in Chicago during the week in which February 1, 1947, occurred. The trade did not care for the taxpayer's display and no orders were placed. Nothing daunted, the promoter got permission to travel about the country and endeavor to solicit customers for the nickel-dime machine. This attempt was completely unsuccessful. The promoter finally turned back his stock and quit the company in March, 1947.

■ Out of this when can the taxpayer claim that his loss from the value of an active useful inventory to salvage took place? We held in the Mine Hill case, cited above, that the loss occurs when it takes place in fact. We think the loss in this instance took place in 1946 even though the taxpayer evidently did not realize the hopelessness of trying to mend a bad situation.

■ There is one proposition of law involved. Is an optimistic taxpayer subsequently prevented from claiming his loss for an obsolete inventory as of the date when it, in fact, became obsolete, because he tried to use the material bought for his unsuccessful venture by readjusting his product so as to keep his market alive? The tax court cites two Board of Tax Appeals cases. They are: American Manganese Steel Co. v. Com-

missioner, 1927, 7 B.T.A. 659; and Dunn Manufacturing Co. v. Commissioner, 1928, 14 B.T.A. 225. In the Manganese case it is emphasized that management believed that some of its obsolete material "might be disposed of as a result of a sales campaign." While that hope lingered the board did not seem to think the taxpayer could take its loss. In the Dunn case the court seems to emphasize the subjective state of mind of the taxpayer as fixing the time when material becomes worthless. The court says "if they [the elevators in question] were obsolete and worthless, it does not appear that they were so known to be or considered by the petitioner's officers."

On the other hand, we find two federal cases dismissed by the tax court as "several cases in other courts" which we think are in accord with the position we are taking here and also in accord with the position we took in the Mine Hill case. They are: Queen City Woodworks & Lumber Co. v. Crooks, D.C.W.D.Mo., 1934, 7 F.Supp. 684; and Lucker v. United States, Ct.Cl., 1931, 53 F.2d 418. The latter especially we think strong authority for our position.

It would be unfortunate if efforts made by a taxpayer to use expensive inventory for something other than junk were to be at his peril tax-wise.[1] It is an uneconomical thing to scrap expensive material for junk if there is better use to be made with it. That is what this taxpayer tried to do. His efforts were predestined to failure as both the taxpayer and we can now see. But taxpayer did not see it in 1946, perhaps, even though it is now perfectly clear that that is the date at which the ill-conceived business venture failed.

The decision of the tax court will be reversed.

---

[1] The government would not lose tax revenues if our view is followed. If taxpayers are allowed to take their loss when the inventory has become obsolete, and if subsequently their efforts at life saving are successful, their net profits will be increased because the cost of their inventory in the future period will be its salvage value. The government would then have larger profits upon which to impose taxes. On the other hand, if efforts to use inventory which has become obsolete are to be at the taxpayers' peril tax-wise, taxpayers will not be anxious to attempt salvage and will scrap their inventory and take their losses.