BERNARD E. TEICHGRAEBER, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Teichgraeber v. Commissioner
Docket Nos. 7591-74, 7592-74, 7593-74, 7594-74
United States Tax Court
T.C. Memo 1979-500; 1979 Tax Ct. Memo LEXIS 22; 39 T.C.M. (CCH) 710; T.C.M. (RIA) 79500; December 13, 1979, Filed; As Amended December 14, 1979 Elliot Ira Miller, for the petitioners. Richard S. Kestenbaum and Peter Matwiczyk, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined the following deficiencies in, and additions to, the petitioners' Federal income taxes: Taxable
Addition to Tax Petitioner
Year
Deficiency
Sec. 6652(a) [2]
Bernard E. Teichgraeber
1967
na $28,488.78
Estate of Barbara G.
(Yr. ending
271.70
Teichgraeber, deceased,
9/30/67)
Bernard E. Teichgraeber
and Richard F. Teichgraeber,
Executors
Bernard E. Teichgraeber and
(Yr. ending
9,260.10
Estate of Barbara G.
12/31/66)
Teichgraeber, deceased,
Bernard E. Teichgraeber and
Richard F. Teichgraeber,
Executors.
Richard F. Teichgraeber and
1966
12,231.08
Winifred Teichgraeber
1967
47,159.13 $20
*24 The single issue for decision is whether respondent could properly increase petitioners' taxable incomes for 1967 by disallowing a "conversion error loss" deduction of petitioners' partnership. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts together with attached exhibits are incorporated herein by reference. Petitioner Bernard E. Teichgraeber (hereinafter referred to as Bernard) maintained his legal residence in Greenwich, Connecticut at the time his petition in this case was filed (dkt. No. 7591-74). Petitioner filed his individual Federal income tax return for the taxable year 1967 on November 21, 1968. The record does not indicate where his return was filed. Bernard and Barbara G. Teichgraeber were husband and wife. Barbara G. Teichgraeber died on October 14, 1966. For the fiscal period commencing October 14, 1966, and ending on September 30, 1967, the Estate of Barbara G. Teichgraeber, deceased, *25 Bernard E. Teichgraeber and Richard F. Teichgraeber, Executors, filed a fiduciary Federal income tax return with the District Director of Internal Revenue, New York, New York. For the taxable year 1966 Bernard E. Teichgraeber and the Estate of Barbara G. Teichgraeber, deceased, Bernard E. Teichgraeber and Richard F. Teichgraeber, Executors, filed an amend joint Federal income tax return with the District Director of Internal Revenue, New York, New York.
Richard F. Teichgraeber and Winifred M. Teichgraeber were husband and wife for the taxable years at issue. For the taxable years 1966 and 1967, they filed their joint Federal income tax returns with the District Director of Internal Revenue, New York, New York (dkt. No. 7594-74). During the calendar year 1966 and until April 27, 1967, petitioner Bernard Teichgraeber was a general partner in the partnership of Thomson & McKinnon (hereinafter the partnership). Petitioner Richard Teichgraeber, father of Bernard, was a general partner in the artnership during 1966 and 1967 until December 31, 1967. Bernard's late wife, Barbara, was a limited partner in the partnership in 1966 until her death on October 14, 1966. Bernard's capital *26 account with the partnership (initial contribution) was $160,000, Richard's was $304,000, and Barbara's was $75,000. The partnership was in the business of brokerage and purchase and sale on commission of securities and commodities. Upon terminating his partnership interest in April 1967, Bernard entered into a "subordinated cash loan agreement" with the partnership whereby his partnership interest was converted into a subordinated debt of the partnership. [3] Bernard demanded repayment of the subordinated loan on October 3, 1967. Ultimately, on or about November 24, 1967, Bernard instituted arbitration proceedings before the New York Stock Exchange, and on or about July 8, 1968, an award was issued by the arbitrators. Pursuant to the award, the partnership paid Bernard $167,493.33, which represented a return of Bernard's capital amount plus interest which had accrued during the period of the subordinated cash loan agreement. The arbitration award stated *27 that: It is also hereby decided and determined that this award is in no way intended to preclude the respondents (sic) [the partnership's] recovery from claimant [Bernard], of the proportionate share of any losses for which the claimant would be responsible as a former general partner of Thomson & McKinnon [the partnership] in accordance with his partnership agreement. Accordingly, after the arbitration award, Bernard paid $74,576.47 to the partnership, representing his then-determined pro-rata share of the partnership losses. Only Bernard Teichgraeber (dkt. No. 7591-74) participated in an arbitration agreement with the partnership to determine the value of his interest after retiring from the partnership. The accounts of remaining petitioners were settled with the partnership without recourse to arbitration. Respondent subsequently determined that the following items were improperly reported on the partnership return for the periods ending December 31, 1966, and December 31, 1967: 1966
1967
Interest expense incurred to
$145,143.74 $ 97,431.40
carry tax exempt bonds
Bad debts
462,322.23
97,412.39
Travel and entertainment
25,780.86
33,679.35
expense
Conversion errors
1,343,740.00
*28 Accordingly, respondent issued deficiency notices to petitioners herein, in which he explained the adjustments made in the partnership's returns for the taxable years 1966 and 1967, and increased petitioners' taxable incomes to reflect their shares of the partnership income for those years. [4]
Initially, the Service proposed to disallow the $1,343,740 deduction for conversion errors, claimed by the partnership on its 1967 return, in its entirety. However, the Service later agreed to accept the full amount of the conversion account disallowance, not in 1967, as originally claimed, but in 1968. Thus, all of the partnership members were assessed deficiencies for 1966 and 1967, based (in part) on the partnership's disallowed 1967 "conversion error loss" deduction of approximately $1.3 million, which thereby increased each partner's *29 taxable income for that year by his pro rata share in the partnership. However, in regard to the roll-over of the conversion error loss to the partnership from 1967 to 1968, the partnership noted in a 1973 letter to the partners from the partnership executive committee, that this delayed deduction would be beneficial to its 1968 members, because the partnership had a higher taxable income in 1968, so that most partners probably were in higher tax brackets, and also because of the 7-1/2 percent tax surcharge applicable in 1968. Thus, the letter stated, the deduction in 1968 would be worth substantially more to them, in total, than he same deduction in 1967. OPINION Petitioner, Bernard Teichgraeber, was a general partner of Thomson and McKinnon during 1966 and through April 27, 1967. During the period commencing January 1, 1966 and ending at her death on October 14, 1966, Bernard's late wife, Barbara, was a limited partner in the partnership. During 1966 and 1967, petitioner Richard Teichgraeber was also a general partner of Thomson and McKinnon. Thomson and McKinnon was in the business of brokerage and purchase and sale on commission of securities and commodities for customers. *30 Pursuant to the partnership agreement, net operating profits and losses were charged against the capital accounts of the individual partners in accordance with percentages established in the partnership agreement. When the partnership converted its bookkeeping system from an in-house system to a computerized system maintained by an independent organization, certain "conversion error losses" were incurred. The "conversion error losses" were caused by mistakes in recording the purchase or sale of securities by the brokers, such as, for example, recording the wrong security, or recording the wrong broker. These errors caused "differences" and were researched by a "difference crew." After a certain amount of time, these differences were transferred into a "difference account" for further research. It was in relation to these differences that the ultimate corrective sales and purchases took place. Apparently, what could not be recovered or straightened out by sale was marked by the partnership as a "conversion error loss." In June 1968, the partnership decided to take a deduction for these conversion error losses against 1967 income. At that time the capital accounts of each partner *31 were reduced accordingly. In notices of deficiencies subsequently issued, respondent determined that the conversion error losses did not occur in 1967, and petitioners' distributive shares of the partnership net income for 1967 were therefore increased. It is respondent's position that the conversion error loss was properly allowable in 1968, when petitioners were no longer partners. Thus, although the amounts received by petitioners on their withdrawal from the partnership were computed as though the conversion error losses occurred in 1967, the respondent has disallowed the loss in that year and allowed it in 1968. Since petitioners were not partners in 1968 they were unable to take advantage of the loss and claim any part of the deduction. The net effect is that petitioners' capital accounts were computed on withdrawal from the partnership to reflect conversion error losses as occurring in 1967 while the respondent contends that the loss was allowable to the partnership in 1968. In our Memorandum Sur Order of March 2, 1976, we succinctly stated for the benefit of both parties the issue presented by these facts: The key question in this case is the year in which all events *32 fixed the fact of a loss to the partnership. The determination as to the year of a loss is made by examining all the facts and circumstances. If, upon trial, the Court should find that the loss occurred in 1967, petitioners will prevail. However, if the loss is found to have occurred in 1968, petitioners will be liable for the deficiencies since they were no longer partners in 1968, and thus would not be entitled to deduct any loss in that year. [5]
*33 Focusing on the year of loss, it is well-established that the question of the year in which a loss is sustained is one of fact. See C-O-Two Fire Equipment Co. v. Commissioner,219 F.2d 57 (3d Cir. 1955), revg. 22 T.C. 124 (1954); Coors Porcelain Co. v. Commisioner,52 T.C. 682 (1969), affd. 429 F.2d 1 (10th Cir. 1970) (involving an alleged loss resulting from a bookkeeping error made in a prior year). For the allowance of a loss deduction, the hornbook law is that "the loss must be one sustained in a closed transaction during the taxable year." [Emphasis added.] [5 Mertens, Law of Federal Income Taxation, sec. 28.04, p. 10 (1957 rev.).] See also Sec. 1.165-1(b) and (d), Income Tax Regs.
The partnership herein follows a calendar-year accrual basis method of accounting. On the record before us, we find that the conversion error account was not closed, and thereby given up as a loss, for purposes of the case herein, until sometime in 1968. First, in a letter from the partnership to its partners, including the *34 Teichgraebers, who were affected by respondent's disallowance of the several deductions for 1966 and 1967, the executive committee of the partnership stated that: After more than three years of intensive negotiations, the IRS has agreed to accept the $1,343,740 of the conversion account disallowance as a proper deduction in full, however, not in 1967 as originally claimed, but in 1968 (which was the year of the ultimate write-off). [Emphasis added.] In addition, petitioner Bernard Teichgraeber, in his affidavit in support of the petitioners' motion for summary judgment, after stating that he has personal knowledge of all the facts and circumstances therein contained, states, in explaining how the conversion errors (referred to here as the "difference account") were handled: On our about July 28, 1967 the annual surprise audit required by the New York Stock Exchange and the Securities and Exchange Commission was conducted of the Partnership's books and records by an independent certified public accounting firm. As a result of that audit the New York Stock Exchange was informed that the Partnership's difference account amounted to a net deficit of approximately $2,064,000.00. *35 Steps were taken to reduce * * * the difference account deficit. As of the end of 1967, the net debit differences were reduced to $1,343,740.00. In June of 1968, the Partnership made the decision that it had done everything possible to correct the errors and that it should accrue the deduction against 1967 income via amendment to the 1967 Partnership return. At that time the capital accounts of each partner, including that amount of the capital account withheld from my father when he withdrew, were reduced accordingly. I paid my pro rata share of these losses in accordance with the arbitration decision. * * * [Emphasis added.] Finally, Joseph F. Marino, controller of the partnership beginning in May 1968 (when the books and records concerning conversion error losses were still being straightened out) testified as follows on this question: [Counsel for Respondent] * * * It was on that [partnership's 1967] Return that the conversion loss was deducted. When did the majority of the sales and purchases of the securities represented in the difference account take place? [Mr. Marino] July and August of 1968, were our clean up months. [Emphasis added.] Thus, *36 for purposes of the case herein, we find that the conversion error losses should properly have been taken as a deduction by the partnership in 1968 rather than 1967. Petitioners have not addressed the issue of whether 1967 or 1968 was the proper year of the loss. Rather petitioners at trial took the position that "the correct year of the loss * * * is irrelevant to the correctness of trying to tax the petitioners on an income they never got and never could get." This is simply not the law, for it is clear under the law of partnership taxation that the petitioners did receive income from the partnership. As the Supreme Court has succinctly stated: Section 703 of the Internal Revenue Code of 1954, insofar as pertinent here, prescribes that "[the] taxable income of a partnership shall be computed in the same manner as in the case of an individual." 26 U.S.C. § 703(a). Thus, while the partnership itself pays no taxes, 26 U.S.C. § 701, it must report the income it generates and such income must be calculated in *37 largely the same manner as an individual computes his personal income. For this purpose, then, the partnership is regarded as an independently recognizable entity apart from the aggregate of its partners. Once its income is ascertained and reported, its existence may be disregarded since each partner must pay tax on a portion of the total income as if the partnership were merely an agent or conduit through which the income passed. [United States v. Basye,410 U.S. 441, 448 (1973). (Fn. ref. omitted).] The tax provisions governing this case are fundamental and based upon common notions of partnership law. Section 701 provides that it is each individual partner and not the partnership that is subject to tax. Section 702 provides that each partner must take into account his or her distributive shares of the partnership's net income. Section 704(a) provides that a partner's distributive share of partnership income shall be determined by the partnership agreement. The partnership agreement in effect in 1967 provided that net operating losses were chargeable to each partner's *38 capital account in a specified percentage. Accordingly, the partnership's disallowed deductions for the taxable year 1967 become taxable income to each partner, prorata, who was a member of the partnership during that year. It is clear that an item will be net income to a partner whether or not a distribution is actually made. See 6 Mertens, Law of Federal Income Taxation, sec. 35.22 p. 70 (1975 rev.). As the Supreme Court also clearly stated in Basye, "Few principles of partnership taxation are more firmly established than this one that no matter the reason for nondistribution each partner must pay taxes on his distributive share." United States v. Basye,410 U.S. 441, 454 (1973). [Citations omitted.] The disallowance of the conversion errors loss affected the members of the partnership as of 1967 only. The allowance of that item as a deduction in 1968 affected the partners of that year only. This follows from application of the rules of partnership taxation to the facts before us. Petitioners nevertheless advance three arguments. First, they contend *39 that they did not receive any economic benefit from the increase in partnership income for 1967 occurring by reason of the reduction of the partnership's deductions for that year, and that to charge them with such "phantom income" would violate the Sixteenth Amendment to the Constitution of the United States and established principles of law holding that income includes only accessions to wealth and readily ascertainable economic gains. Second, petitioners assert that if the Commissioner's position is sustained, an offsetting deduction should be allowed to petitioners to take into account for tax purposes the adverse economic impact suffered by them when their capita accounts were charged with the conversion error losses in 1967. Third, petitioners contend that fairness and equity in the tax laws precludes the imposition of taxes on "phantom income" which petitioners never received or could receive. Aside from dicta in James v. United States,366 U.S. 213 (1960), and Commissioner v. Glenshaw Glass Co.,348 U.S. 426 (1955) (observing that income may be *40 constitutionally taxed only when there is a gain with readily realizable economic value or an undeniable accession to wealth, clearly realized), petitioners' constitutional argument rests on Bowers v. Kerbaugh-Empire Co.,271 U.S. 170 (1926), and Conner v. United States,439 F.2d 974 (5th Cir. 1971), both of them inapposite to the facts before us. In Kerbaugh-Empire the Supreme Court held that the difference between marks borrowed and marks paid back on a loan integrally related to a business venture was not income because the entire venture resulted in a substantial loss. The Court observed that "The loss was less than it would have been if marks had not declined in value; but the mere diminution of loss is not gain, profit, or income." 271 U.S. at 175. Conner v. United States,supra which was primarily concerned with the question of how to compute the amount of a casualty loss to a dwelling, is not analogous to the facts before us. Petitioners contend United States v. Basye,supra is authority for providing them with a deduction for the portion of their capital accounts retained *41 by the partnership to cover the conversion error loss. Petitioners argue that the district court opinion, Basye v. United States,295 F. Supp. 1289 (N.D. Cal. 1968), noted that the Service there proposed to allow a partner who forfeited her rights to deferred compensation "an ordinary loss deduction which would offset the assessment of trust income made against her." Basye at 295 F. Supp. 1289, 1292. On this basis, petitioners argue that they should be allowed an offsetting ordinary loss deduction for 1967 to compensate for the economic loss sustained by them in that year when, as to them, the economic impact of the transaction was irrevocably sustained. However, Basye v. United States,supra dealt with whether an item was currently taxable as income to a partnership at a given time. In addition, in United States v. Basye,410 U.S. 441 (1973), the Supreme Court, following a long line of legislative history and commentary, reiterated the concept of the partnership as the tax reporting entity, and the partner as the tax paying entity, for the purpose of passing along the taxable-as-income character *42 or the deductible-as-expense character of a particular item. United States v. Basye,supra at 448. See also Moore v. Commissioner,70 T.C. 1024, 1029 (1978), and Frankel v. Commissioner,61 T.C. 343, 349 (1973), affd. 506 F.2d 1051 (3d Cir. 1974). We see no basis for providing petitioners with the loss deduction they claim. Finally, petitioners' argument that fairness and equity requires them to prevail must also fail. If they have been treated unfairly, it is by the partnership in connection with their withdrawal. As respondent points out, petitioners' position would mean that the Government is bound by the partnership information return in the case of a partner who was a member of the partnership in one year but not in a subsequent year. Petitioners are really arguing that under the circumstances before us, a retiring partner's liability is fixed as of the date he withdraws from the partnership, and the Government may not make an adjustment as to the proper year of deduction in any subsequent audit. This is clearly not the law, and indeed, as to the items other than the conversion error loss involved in *43 the judgments before us (interest expenses, bad debts, and travel and entertainment expenses) petitioners do not really contend that the adjustments were improper. We believe that any grievance petitioners have about the inadequancy of the amounts received on the settlements of their capital accounts was properly with the partnership. Though the result may be unfortunate for petitioners, it is clear that under the terms of the partnership agreement, and according to well-established principles of partnership taxation, petitioners realized an increase in taxable income from the partnership based on the disallowed partnership deductions for the taxable years (1966 and 1967) during which they were members of the partnership. Decisions will be entered for the respondent.
Footnotes
1. Cases of the following petitioners have been consolidated herewith: Estate of Barbara G. Teichgraeber, deceased, Bernard E. Teichgraeber and Richard F. Teichgraeber, Executors, docket No 7592-74; Bernard E. Teichgraeber and Estate of Barbara G. Teichgraeber, deceased, Bernard E. Teichgraeber and Richard F. Teichgraeber, Executors, docket No. 7593-74; Richard F. Teichgraeber and Winifred M. Teichgraeber, docket No. 7594-74.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue, unless otherwise specified. na $18,693.78 of the $28,488.78 asserted deficiency remains in dispute.↩
3. Although usual circumstances may have warranted a liquidating distribution, at that time the partnership was unable to make such a distribution because of capital requirements established by the New York Stock Exchange.↩
4. At trial and on brief, petitioners did not address the adjustments pertaining to interest expense, bad debts, and travel and entertainment expenses. Instead, as explained infra,↩ they focused their attention on the conversion error losses, contending this adjustment created "phantom income" that cannot constitutionally be taxed to them.
5. There have been numerous hearings in this case and at nearly every point it has been made clear to the petitioners that this was the central issue in the case. Petitioners filed a motion for an order to produce documents in the cases herein, pursuant to Rule 70, Tax Court Rules of Practice and Procedure on January 17, 1975 (relating to a Technical Advice Memorandum by respondent). After a hearing, on February 26, 1975, such motion was denied. See Teichgraeber v. Commissioner,64 T.C. 453 (1975). Petitioners subsequently filed a motion for summary judgment, pursuant to Rule 121, Tax Court Rules of Practice and Procedure, on October 23, 1975. Following a hearing on January 21, 1976, petitioners' motion was denied on March 2, 1976, by a Memorandum Sur Order which determined that there was a genuine issue of fact for trial. Petitioners, in turn on March 10, 1976, filed a motion for reconsideration by the Court en banc or in the alternative by the Chief Judge of their motion for summary judgment and the Memorandum Sur Order dated March 2, 1976, denying such motion, pursuant to Rule 121, Tax Court Rules of Practice and Procedure. This motion was denied in both alternatives by an order dated April 2, 1976.
Petitioners had also, on March 10, 1976, filed a motion to amend and revise the Memorandum Sur Order to provide for an immediate appeal to the Circuit Court of Appeals pursuant to 28 U.S.C. sec. 1292(b)↩ on the ground that a "controlling question of law" was involved. Such motion was denied by an order dated April 2, 1976.